UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RONALD LYNN JONES, | ) |
| Plaintiff | ) ) ) |
| v. | ) No. 3:12-0436 ) Judge Trauger/Brown |
| CORRECT CARE SOLUTIONS, LLC, | ) ) ) |
| Defendant | ) |

TO: THE HONORABLE ALETA A. TRAUGER

### REPORT AND RECOMMENDATION

For the reasons stated below the Magistrate Judge recommends that the Defendant's motion for summary judgment (Docket Entry 15) be GRANTED and this case dismissed with prejudice. The Magistrate Judge further recommends that any appeal in this matter not be certified as taken in good faith.

### BACKGROUND

The Plaintiff filed this action against Sheriff Daron Hall, the Davidson County, Tennessee's Sheriff's Office, and Correct Care Solutions (CCS) on April 30, 2012. In his complaint he alleged that in 2011 he found out about a treatment for African-Americans with Hepatitis C, using a new drug Victrelis. He alleged that this was a cure for Hepatitis C. He contends that on November 18, 2011, he started filling out sick call requests about his health problems and started requesting Victrelis. He alleges that the Defendants refused to treat him with the new drug and that his health was deteriorating. He alleged he was having nightmares about the refusal to give him the drug that could cure him.

The case was initially screened (Docket Entry 4). As a result of the screening, which provided an excellent summary of the Plaintiff's complaint, Sheriff Hall and the Davidson County Sheriff's Office were dismissed from the case. The case was allowed proceed against CCS as construing the Plaintiff's allegations very broadly it was possible to raise an inference that CCS denied the Plaintiff access to the drug Victrelis as a matter of policy, and thereafter acquiesced in the decision to deny him access to the drug without performing any kind of individualized assessment of the Plaintiff's needs and suitability for the particular medication. Citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), which held "At a minimum a Section 1983 the plaintiff must show that a supervisory official at least condoned, authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."

The District Court went on to find that assuming Hepatitis C constitutes a sufficiently serious medical issue to satisfy the objective component of the test for an Eighth Amendment violation under *Hix v. Tennessee Department of Corrections*, 196 F. App. 350 (6th Cir. 2004) the complaint again "construed very broadly" could be read to assert that he was a candidate for the use of Victrelis, but was denied appropriate treatment for Hepatitis C. His allegation that his condition was worsening could give rise to an inference that delay in adequate and necessary treatment caused deterioration.

2

The Court concluded that despite the paucity of detail in the Plaintiff's complaint the Court found the Plaintiff had alleged facts, which taken as true, might establish that CCS had been deliberately indifferent to the Plaintiff's serious medical needs.

The matter was referred to the undersigned for case management and a report and recommendation on any dispositive motions (Docket Entry 5).

After being served, CCS promptly filed a motion for summary judgment (Docket Entry 15) supported by an affidavit of Jeremy McCraw, a Registered Nurse employed as the Assistant Health Service Administrator for CCS (Docket Entry 15-1).

Mr. McCraw attached to his affidavit a series of documents (Docket Entry 18, Ex. 1-10). The first of these, Exhibit 15-1, is a comprehensive policy of CCS's Practitioner's Clinical Guide dealing with Hepatitis C. Following this guideline, various of the Plaintiff's medical records are attached in chronological order (Exhibits 18-2 through 18-10). A statement of undisputed material facts was filed as Docket Entry 17.

The Plaintiff was served with these various pleadings at the latest on August 27, 2012. As of the date of this report and recommendation the Plaintiff has filed no response whatever.[1]

---

[1] The Magistrate Judge notes that the Plaintiff requested, and was furnished, a copy of the Court's Local Rules on May 16, 2012 (Docket Entry 16).

## LEGAL DISCUSSION

Even though the Plaintiff failed to respond to the motion for summary judgment, the Magistrate Judge must nevertheless examine the various pleadings to determine whether the Defendant is entitled to summary judgment in this matter. The Magistrate Judge may however take as true statements of undisputed material facts (Docket Entry 17), which have not been contested. Local Rule 56.01(g). Although there are some 47 statements, in view of the initial screening order in this case (Docket Entry 4), the Magistrate Judge considers the following to be pertinent to this motion for summary judgment. They are supported in the record and are taken as undisputed.

**Statement 8:** The Plaintiff was incarcerated at the Criminal Justice Center (CJC) from June 29, 2011, until July 23, 2012.

**Statement 9:** CCS provides medical care to inmates at the CJC.

**Statement 10:** On July 23, 2012, Plaintiff was transferred to the Metro Detention Facility (MDF).

**Statement 11:** CCS does not provide medical care to inmates at the MDF.

**Statement 12:** Upon arrival at CJC inmates undergo a receiving screen.

**Statement 13:** During the screening inmates are expected to advise CCS of any current or past health problems.

4

**Statement 13.** During the screening, inmates are expected to advise CCS of any current or past health problems. *(Id.* at ¶ 7).

**Statement 14.** In regard to treatment for patients with Hepatitis C (sometimes referred to herein as "HC"), CCS has established Practitioner Clinical Guidelines for the management of inmates infected with Hepatitis C. (Aff. of Jeremy McCraw at Ex. A1).

**Statement 15.** Pursuant to the Guidelines, there is no established evidenced-based criteria that can be used to direct the screening of asymptomatic persons, even persons who are "high risk" for infection because the risk of receiving blood transfusions prior to the blood supply being tested for Hepatitis C or because of injection drug abuse." *(Id.* at p. 2).

**Statement 16.** The presence of a Hepatitis C infection requires a diagnostic evaluation that begins with a history and monitoring for the presence of liver inflammation, which includes the identification of alternative causes of liver inflammation and related clinical conditions. *(Id.)* Exhibits to the Affidavit of Jeremy McCraw are referenced hereinafter solely by the exhibit number for the ease of reading.

**Statement 17.** Liver inflammation causes the release of "liver enzymes," especially ALT into the blood stream. *(Id.)*

**Statement 18.** Although a single ALT determination cannot reasonably detect the presence of liver inflammation, serial determinations can provide reasonable guidance regarding the

5

likelihood of the development of late-stage Hepatitis-C complications. *(Id.)*

**Statement 19.** Historically, ALT levels in the blood that are consistently less than twice the upper limit or normal have been considered to provide good evidence that significant inflammation is absent. *(Id.)*

**Statement 20.** Patients who have been infected with Hepatitis C but do not have significant ongoing liver inflammation should be monitored with ALT determination. *(Id.)*

**Statement 21.** In the absence of significant liver inflammation, progress of HC disease is so slow (if it progresses at all) that medication therapy is not necessary. *(Id.)*

**Statement 22.** While it may be desirable to eliminate HC infection from all patients, the risks and discomfort associated with anti-retroviral medications are not justified by the minimal benefits that might accrue to the individual patient. *(Id.)*

**Statement 23.** Once liver inflammation has been established, inmates must demonstrate Inclusion Criteria, which include ALT blood levels that are persistently greater than twice the upper limit of normal. *(Id.* at p. 5).

**Statement 24.** Further, the inmate must not evidence Exclusion Criteria, which includes a history of documented abuse or alcohol within the preceding 36 months. *(Id.* at pp. 5-6).

**Statement 25.** If after review of the Inclusion and Exclusion Criteria, the inmate remains a candidate for medication

6

therapy, the genotype of the infecting Hepatitis C virus has to be determined. *(Id.* at p. 6).

**Statement 26.** If a genotype is determined, it must be determined whether a liver biopsy is needed. *(Id.* at p. 7).

**Statement 27.** Thereafter, appropriate treatment is rendered. *(Id.* at p. 7-9).

**Statement 28.** On June 29, 2011, Plaintiff underwent a Receiving Screening. (Ex. B).

**Statement 29.** Plaintiff denied exposure or diagnosis of any diseases, including Hepatitis. *(Id.* at p. 1).

**Statement 30.** Plaintiff did state that he consumes 18-24 cans of beer a day. *(Id.)*

**Statement 31.** After his initial screening on June 29, 2011, Plaintiff received periodic medical treatment for other conditions, but failed to advise that he had ever been diagnosed with Hepatitis C and failed to make any complaints or statements related to Hepatitis C. (*See* Ex. C, which contains a collection of Plaintiff's medical records).

**Statement 32.** In addition, during this time, Plaintiff filed numerous sick call requests. However, none of the sick call requests were for treatment for Hepatitis C. (*See* Ex. D, which contains a collection of Plaintiff's sick call requests).

**Statement 33.** During an examination on November 4, 2011, Plaintiff mentioned Hepatitis C, and a Written Provider Order from

7

that date orders lab testing to determine if Plaintiff has Hepatitis C. (Ex. E).

**Statement 34.** Thereafter, on November 8, 2011, Plaintiff's blood was drawn and a report with lab results was prepared on November 9, 2011. (*Id.* at Ex. F).

**Statement 35.** The results show that his ATL level was 61 and the normal range was less than 41. (*Id.* at p. 2).

**Statement 36.** Plaintiff underwent another examination on March 5, 2012. (*Id.* at Ex. G).

**Statement 37.** At that time, Plaintiff reported that he had Hepatitis C and wanted to learn about treatment options. (*Id.* at p. 1).

**Statement 38.** Plaintiff did not mention Victrelis. *(Id.)*

**Statement 39.** Plaintiff reported that he was doing well. (Id.)

**Statement 40.** Thereafter, on March 9, 2012, Plaintiff's blood was drawn and a report with his lab results was prepared on March 10, 2012. (*Id.* at Ex. H).

**Statement 41.** The results show that his ATL level as 39, within the normal range of less than 41. (*Id.* at p. 3).

**Statement 42.** On June 7, 2012, Plaintiff underwent another examination. (*Id.* at Ex. I).

**Statement 43.** It was noted that Plaintiff has a history of Hepatitis C, but has not taken medications during or prior to incarceration. (*Id.* at p. 1).

**Statement 44.** On June 11, 2012, Plaintiff's blood was drawn and a report with lab results was prepared on June 12, 2012. (*Id.* at Ex. J).

**Statement 45.** The results show that his ATL level was 55, and the normal range was less than 41. (*Id.* at p.2).

In Defendant's memorandum (Docket Entry 16, § B) in support of their motion for summary judgment (Docket Entry 15), summarizes their role in providing care to this inmate. The Magistrate Judge has reviewed the various documents and finds that they have accurately summarized the record.

Contrary to the Plaintiff's broadly construed allegations, it appears that CCS in fact has a protocol dealing with Hepatitis C. It further appears that they performed blood test on the Plaintiff at least three times; that one of the tests was within the normal range; and while the other tests were in the abnormal range, they were not sufficiently high to justify the treatment the Plaintiff contends that he wanted. Likewise, contrary to the Plaintiff's contention that he was denied treatment, the medical records show that the Plaintiff was evaluated and given treatment.

The records show that the Plaintiff denied Hepatitis C at his initial screening and made no mention of Hepatitis C until early November 2011. There is no indication in the medical records that the Plaintiff ever specifically sought treatment with Victrelis. It appears from the records that CCS's personnel

regularly saw and treated the Plaintiff and specifically considered whether additional treatment for Hepatitis C was warranted. It would appear that some of the treatment for Hepatitis would have been counter-indicated because of his alcoholism and would have required invasive procedures, such as a liver biopsy.

Under Rule 56(c) of the Federal Rule of Civil Procedure, summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A properly supported motion will not be defeated simply by "the existence of some alleged factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Even if the fact is material, a factual dispute will not defeat summary judgment if the dispute is not "genuine." *Id*. A factual dispute is not genuine when the evidence could not lead a rational trier-of-fact to return a verdict for the nonmoving party. *Id*.

The moving party "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's

10

case, and on which that party will bear that burden of proof at trial." *Id.* at 322.

When the Motion for Summary Judgment is properly made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party's response must set out specific facts showing a genuine issue for trial. *Id.* "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

The Defendant has fully briefed and the 42 U.S.C. § 1983 and Eighth Amendment alleged violations (Docket Entry 16). The Magistrate Judge agrees with their analysis.

The Plaintiff's complaint was allowed to proceed initially despite his very meager allegations. However, now that summary judgment has been filed the Plaintiff may no longer simply rely on his complaint, but must come forward with some evidence to support it. The Plaintiff has totally failed to do so. The records supplied by CCS unmistakably establish that Plaintiff was evaluated, and when he finally complained of having Hepatitis C that he was appropriately treated. Even if the treatment was somehow inadequate, mere disagreement as to the adequacy of treatment does not constitute a Section 1983 or Eighth Amendment violation. *Estelle v. Gamble*, 429 US 104, 105-06 (1976).

Even inadequate or negligent treatment does not establish a valid course of action. *Westlake v. Lucas*, 537 F.2d 857, 860 n.

5 (6th Cir. 1976). Accordingly, the Magistrate Judge finds that the Plaintiff has failed to establish any portion of his case. The record, for the purpose of summary judgment, more than adequately establishes that CCS did not have a policy to refuse treatment for Hepatitis C and did not have a policy not to treat an inmate who complained he suffered from Hepatitis C. Given the fact that the Plaintiff had at least one normal test, it appears that CCS went above the requirements of their protocol and continued to treat and test him. The Plaintiff has simply failed to produce any evidence that CCS did not appropriately treat him. To the extent the Plaintiff disagreed with the treatment he received he has not shown that the treatment he received was so deficient as to constitute no treatment.

### RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that the case against CCS be DISMISSED with prejudice and this case closed. The Magistrate Judge further recommends that any appeal in this matter not be certified as taken in good faith.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of

this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

ENTER this 5th day of February, 2013.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge